IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOHN McCRORY | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil No. CCB-02-2350 |
| DELMARVA AUTO GLASS et. al. | ) ) ) | |
| Defendants. | ) ) ) | |

**JOINT PRETRIAL ORDER**

Pursuant to Local Rule 106, Plaintiff John McCrory and Defendants, Homer King and Delmarva Auto Glass, through their respective Counsel, submit this Joint Pretrial Order for consideration by the Court in the governance of the trial scheduled to commence on November 17, 2003. [1]

**I.    PLAINTIFF'S STATEMENT OF THE FACTS**

**A. Brief Statement of Facts**

About July of 2000, Delmarva Auto Glass ("Delmarva") hired John McCrory ("McCrory"), an African American as a Glass Installer for its Millsboro, Maryland Shop. McCrory was the first African American Delmarva ever hired. Things went without incident until a few months later when McCrory was transferred to Delmarva's

---

[1] While this document is entitled the "Joint Pretrial Order," it should be noted that Plaintiff's Counsel drafted all of the sections pertaining to Plaintiff, that Defendants' Counsel drafted all of the sections pertaining to defendants. Both sides noted their objections to each sides' sections. Moreover, other sections which were not agreed upon by the parties have been noted in the Joint Pretrial Order. The Court should not conclude that either party is in agreement with any portion or section submitted by the other in reference and/or pertaining to this proposed "Joint-Pre-Trial Order unless specifically stated.

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

headquarters, in Salisbury, Maryland. From the time McCrory was transferred to the Salisbury Shop about September of 2000 up until July of 2001 when he was terminated, he was barraged on an almost daily basis with visual and/or verbal attacks against him and his race, African American. On an almost daily basis, McCrory was subjected to intentional discriminatory treatments, ridiculously hostile work environment replete with invective, innumerable racial slurs and epithets, in conjunction with other derogatory comments directed at him by his counterparts and supervisors or managers at Delmarva. A significant percentage of Delmarva's customers are African Americans and the employees and managers of Delmarva referred to those African American customers as either "dark" or "nigger" to McCrory's face, throughout the year and until July 2001when he was terminated.

  Though McCrory voiced his opposition, demonstrated his resentments and in fact, reported the discriminatory conduct of Delmarva employees/managers or supervisors to the owner, Homer King, no corrective or remedial action was ever taken. Prior to McCrory reporting the use of racial slurs to Homer King ("King"), another employee, an Italian, had made a similar report to King, rather than correct the misconduct, King told the Italian to "shut up or go home." Essentially, King himself knew of the racial hostility on the premises of Delmarva but failed to act on it.

 All of Delmarva's Installers with McCrory's experience were allowed to take or undertake the National Glass Certification at Delmarva's expense. McCrory was the only person who was not allowed the same benefit. As a matter of fact, shortly after McCrory reported the use of racial slurs to King, the latter hired two Caucasian males to assume McCrory's roles and duties, relegating McCrory only to certain in-house duties.

1

2

When Delmarva hired McCrory, it was with the promise that McCrory would be given a company van to use. Delmarva or King however failed to make good on his promise to McCrory. Rather than give McCrory the van, King loaned McCrory money to purchase a used van. The used van required numerous repairs and was eventually repossessed.

About July 19, 2001, McCrory was fired under the pretext that he badmouth the company. His termination occurred after he had reported Brian King (Homer King's son) to King, for calling him (McCrory) a "nigger."

As a result of the persistent harassment and discrimination that McCrory suffered while employed at Delmarva, he has been emotionally humiliated, he had sleep disturbances and other stress related symptoms in addition to sustaining significant damages. His relationship with his family and friends changed. So did his desire to be at work.

**B.      Plaintiffs' Legal Theories**

1. That the racially hostile work environment was sufficiently severe or pervasive to alter the conditions of McCrory's employment and to create an abusive working environment and that there is a basis for imposing liability on the employer. *Sharfeldin v. Maryland, Department of Public Safety, 131 F. Supp. 2d 730, 737 (D. Md. 2001).*

2. The conduct in the work place of which McCrory complained was severe, threatening, humiliating (as opposed to merely offensive), and it interferes with his physical and mental well being and job performance. *Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001).* The comments do not have to have been

targeted at the plaintiff personally, because the concern is with the work environment. *Id*

       3.      The use of the word "nigger" and its mere utterance is "pure anathema to African-Americans. It is also held that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously *racial epithet such as "nigger" by a supervisor in the presence of his subordinates. Spriggs Id at 185.*

       4.      McCrory was subjected to severe hostility on a daily basis which is sufficient to show a hostile work environment. *E.E.O.C. v. R & Ventures, 244 F.3d 334, 339-40 (4th Cir. 2001).*

       5.      Delmarva cannot avoid liability in this hostile work environment claim, first because it does not have any anti-discrimination policy to which it can point. Secondly, it clearly knew of the existence of the harassing conduct. In order to avoid a hostile work environment claim, an employer must prove that it exercised reasonable care in preventing and promptly correcting any harassment. It must also show that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *R &R Ventures, 244 F.3d at 341 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).* Even if Delmarva has some anti-harassment policy, the "mere promulgation of an anti-harassment policy, no matter how well-conceived, will not suffice to show the requisite level of care where the employer has administered the policy in bad faith or has rendered it ineffectual by acting unreasonably." <u>Spriggs</u>. 242 F.3d at 187.

Hostile work environment based on race can permeate the workplace to the extent that such an environment might be reflective in a large variety of practices such as

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

4

harassment, assignment of demeaning tasks, discriminatory disciplinary actions, discriminatory layoffs, recalls, retaliation and threats of discharge and discharge. *Adams v. Pinole Point Stee Co., 65 FEP 774 (N.D. Cal. 1994); Brewer v. Miller Brerwing Co., 93-CV-1600-FJS (N.D.N.Y. June 7, 1994' Sims v. Montgomery County Commission, 766 F. Supp. 1052, 53 FEP 118 (M.D. Ala. 1991) and Bonds v. District of Columbia, 93 F.3d 801 (D.C. Cir. 1996)*. Derogatory remarks may constitute direct evidence of discriminatory attitude in the workplace. *Hill v. Lockheed Martin Logistics Management, Inc*., 314 F.3d 657 (4th Cir. 2003)

     In prosecuting Plaintiff's charges and claims against Delmarva, Plaintiff will rely not only on direct evidence but also circumstantial evidence of discrimination. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Desert Place, Inc. v. Costa*, 539 U.S. _____ 2003, 123 S.Ct. 2148 (2003). In conjunction with that, Plaintiff will also rely upon those authorities cited in support of Plaintiff's proposed jury instructions.

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

I.     **DEFENDANT'S BRIEF STATEMENT OF FACTS**

Delmarva denies that it discriminated against Mr. McCrory on the basis of race or by retaliation, as alleged, or otherwise acted unlawfully. Rather, Mr. McCrory was released from employment after he indicated his dissatisfaction with Delmarva's requirement that he travel to Delmarva's Dover, Delaware location and Delmarva's denying him the continued use of a Company van. Mr. McCrory did not bring to the Company's attention any allegations of discrimination until after Delmarva terminated his employment. He was not discharged in retaliation for complaining about a protected activity; his discharge for valid reasons preceded his complaints about the work environment.

Mr. McCrory was originally interviewed for the position of installer by Homer King, President of Delmarva. He started work on July 12, 2000 at Delmarva's Millsboro location. After a few weeks, Delmarva had a greater need for an installer in Salisbury, Maryland and transferred him to Salisbury. At one point prior to July, 2001, Mr. McCrory was working on an installation at Kent County Motors, a body shop in Dover, Delaware. During the summer, Delmarva was short on installers at its Dover operations and needed installers from Salisbury to make the commute. The Kent County Motors body shop manager told Delmarva manager LeRoy Singleton that Mr. McCrory was complaining about having to work in Dover. According to the Kent County Motors' manager, Mr. McCrory said he didn't like working for Delmarva and was going to quit when he got back. Mr. King met with Mr. McCrory and Mr. McCrory explained that he had been upset because his wife was leaving him, and he had problems with his children and his truck. Mr. King said he understood but warned Mr. McCrory that Delmarva would not tolerate further disturbances at a customer location.

On Thursday, July 19, 2001, Mr. King told Mr. McCrory that he could no longer use the Company van. That afternoon, Mr. McCrory was at a dealership in Snow Hill, Maryland, installing a windshield and happened to be near Dave Kelly, an installer from a different company. Mr. McCrory told Mr. Kelly that Mr. King was "unfair" and that he was going to quit when he returned to Delmarva. Mr. Kelly reported this to Delmarva's manager C.J. Stonnell and told Mr. Stonnell what Mr. McCrory had said. Mr. Stonnell reported this to Mr. King.

When Mr. McCrory returned to Delmarva at 4:00 p.m., Mr. King met with him. Mr. King brought him into the office and confronted him with what Mr. Kelly had said. This was the second time that Mr. McCrory had bad-mouthed Mr. King and the Company. Mr. King stated that if it was true that Mr. McCrory wanted to quit that maybe he and Delmarva should part ways. Mr. King stated that Mr. McCrory could pick up his final paycheck on Friday, July 20, 2001. At no time during this meeting did Mr. McCrory allege that he had been subjected to racial comments. Mr. King asked Mr. McCrory to clean out his van, collect his tools and offered him a ride home with another installer. They shook hands and Mr. King wished him well.

On July 20, 2001, Mr. McCrory asked to meet with Delmarva's co-owner, Mr. Parks. During a meeting with Mr. Parks, Mr. McCrory alleged, for the first time, that he had been subjected to racial remarks. Mr. Parks and Mr. King discussed the matter and Mr. King made the decision that the termination, based on other lawful considerations would stand. Once Mr. McCrory's employment was terminated, he had no right to reinstatement.

**II.   SIMILAR STATEMENTS AS TO ANY COUNTERCLAIM/CROSS CLAIM/THIRD PARTY CLAIM.**

**Not applicable.**

**III.   ANY AMENDMENTS REQUIRED OF THE PLEADINGS**

Plaintiff will supplement pleadings to include the Right to Sue Letter from EEOC for his Title VII claim and the report of Plaintiff's expert, both of which were given to defense counsel several months ago.

**V.   ANY ISSUE IN THE PLEADINGS THAT IS TO BE ABANDONED:**

None.

**IV.   STIPULATIONS OF FACT OR IF THE PARTIES ARE UNABLE TO AGREE TO REQUESTED /REUESTED STIPULATIONS OF FACT.**

That Plaintiff worked at Delmarva from July 2000 to July 2001

That Plaintiff was fired in July 2001

That at the time Plaintiff was fired, he was on the same salary he started with - $12.00 per hour.

**1. Defendants have requested the following stipulations of Fact**

1.   McCrory was hired by Delmarva Auto Glass at the rate of $12.00/hour (Def.'s Req.27).

2   Mr. McCrory was earning an hourly rate of $12.00/hour when his employment at Delmarva Auto Glass terminated.  (Def. Req. 28).

3   Mr. McCrory did not earn outside income from any employer aside from Delmarva Auto Glass during the year 2001.  (Def. Req. 30).

4.   Mr. McCrory worked at Glassmasters in Richmond for about six months or so (after his termination from Delmarva Auto Glass.  (Def. Req. 33/34).

5. Mr. McCrory began working for Binswanger around October 2002 at the rate of $15.13 per hour. (Def Req. 35).

6. Mr. McCrory remains employed by Binswanger. (Def. Req. 37)

7. Mr. Homer King spoke with Plaintiff about five (5) times over the phone prior to the commencement of employment at Delmarva. (Pl. Req. 2).

8. Delmarva has no documentary proof of having issued disciplinary action against Plaintiff prior to firing him in July 2001. (Pl. Req. 4).

9. Mr. Kevin King was once a manager who was demoted and transferred to the Salisbury shop. (Pl. Req. 6).

10. Mr. Kevin King was demoted because of his misconduct toward others. (Pl. Req. 7).

11. About the same time Mr. Homer King loaned money to Plaintiff, he also loaned money to other Delmarva employees). (Pl. Req. 8).

12 Delmarva did not give plaintiff a van to use until 2001. (Pl. Req. 9).

13 Two Caucasian males were hired as installers between April and June 2001 at the Salisbury shop. (Pl. Req. 10).

14 Delmarva hired Plaintiff about mid July of 2000. (Pl. Req. 15).

15. Delmarva had approximately five vans at that time. (Pl. Req. 16).

16. Mr. Homer King directed Plaintiff to drive to certain installers whose driver's licenses were suspended to various jobsites. (Pl. Req. 19).

17. Plaintiff was the only African-American (Black) employee hired in the history of Delmarva. (Pl. Req. 20).

18. Mr. Kevin King still works for Delmarva. (Pl. Req. 26).

19. Mr. Kevin King has used the word "nigger" on Delmarva Auto Glass' premises on one occasion. (Pl. Req. 27).

20. Mr. Kevin King is not the only person who has used the word "nigger" on the job (Pl. Req. 28).

21. Mr. Homer King promised to give Plaintiff a raise within one year of his employment. (Pl. Req. 29).

22. Plaintiff was not given any raise prior to termination. (Pl. Req. 30).

23. Certain ex-employees of Delmarva Auto Glass did not pay off the loan they took from Homer King. (Pl. Req. 34).

24. Delmarva does not have performance appraisals or evaluations for its employees during the years 2000 and 2001. (Pl. Req. 39).

**2. Plaintiffs object to Defendants' Requestesd Stipulation of Fact.**

Plaintiff objects to defendants Requested Stipulation of Facts to the extent that they will preclude Plaintiff from proffering evidence or testimony on them. Thus, Plaintiff does not stipulate to them. Additionally, certain alleged stipulations are in dispute. For example, with respect to Stipulation 19 above, Plaintiff strongly disagrees with the phrase "on one occasion" in that Kevin King constantly and on an almost daily basis used the word "nigger" during Plaintiff's employment at Delmarva. Stipulation to these facts will not only substantially castrate but will also strip Plaintiff of his rights under the due process of law. A significant portion of these alleged stipulations constitutes his entire case. Precluding him from arguing them at trial will do no less than strangle him.

VII. **THE DETAILS OF THE DAMAGES CLAIMED OR ANY OTHER RELIEF SOUGHT OF THE DATE OF THE PRE-TRIAL CONFERENCE**.

    **A.**    **Plaintiff**

| | | |
|---|---|---|
| 1. | Compensatory damages | $7.0 Million dollars |
| 3. | Punitive damages | $21 Million Dollars |
| 4. | Attorney fees | $99,383.75 (this does not include attorney fees up to and including the trial) |
| 5. | Costs | $7,125.85 |

Plaintiff reserves the right to amend his damages based on the costs, compensatory damages and increasing attorney fees. Plaintiff requests the jury to find in his favor on Plaintiff's Section 1981 claim, which includes his costs for prosecuting this action, compensatory damages, punitive damages, attorney fees, as well as any other relief deemed just or proper.

    **A. Defendant**

Plaintiff is seeking compensatory damages against Mr. King and Delmarva Auto Glass, jointly and severally in the amount of $7,000,000 and punitive damages in the amount of $21,000,000. Plaintiff has not provided Delmarva Auto Glass with a back pay analysis. Delmarva Auto Glass contends that Mr. McCrory's back pay award is limited to a period of six months, at most, after which Mr. McCrory found comparable employment. Delmarva Auto Glass contends that Mr. McCrory has not sufficiently demonstrated proof that he would be entitled to compensatory damages or punitive damages.

    VIII. **EXHIBITS**

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

### A. Plaintiffs Exhibit Listing

1. Plaintiff's Employment Contract

2. Plaintiff's personnel file

3. Personnel files for all similarly situated employees or Glass Installers

4. Videotape of Delmarva in Salisbury, Maryland

5. Receipts for Costs

6. Attorney Fee Records/ Summary

7. Doctor receipts and costs

8. Pay Summary for Delmarva Employees

9. Any document received from Defendant in Discovery

10. EEOC Finding and Determination

11. Any document identified by defendants.

    Plaintiff's list of documents does not include documents that may be used for purposes of impeachment or rebuttal; and does not include documents that may be used as demonstrative evidence. Plaintiff expressly reserves the right to introduce any exhibit by defendant and additional exhibits, whether or not identified herein.

### B. Defendant's Exhibits.

    Delmarva Auto Glass does not expect to introduce documents during its case. However, Delmarva Auto Glass may introduce the following documents if the need arises:

1. Plaintiff's resume submitted to Delmarva Auto Glass

2. DAG 000024 - McCrory's Windshield Repair flier

3. McCrory's W-2 from Delmarva Auto Glass (2001)

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

4.  DAG 000081 - 84 - VVP America, Inc. Personnel Authorization, Employment Application and Form NC-4.

5.  VVP America, Inc. Earnings Statement (period ending 2/27/03).

6.  VVP America, Inc. W-2 and Earnings Summary (2002)

**C. Exhibits to which the Parties Stipulate Are Authentic**

None.

**IX.         Witness List**

**A. Plaintiff's Witness List**

1.  Jim Ochs, 118 Summit Drive Blacksburry, S.C. 29702 800-365-1907

2.  Tina Ochs, 118 Summit Drive Blacksburry, S.C. 29702 800-365-1907

3.  Larry Jones, 9206 Crockett Pl. Upper Marlboro, MD 20772 301 780-3210

4.  Mara McCrory 7001 Bundy Road New Orleans, Louisiana 70127

5.  Chris McCrory10301 I-10 Service Road, New Orleans LO 70127 504 241 3353

6.  John McCrory II 1832 Garden Str. New Orleans, LO 70117 504-947-2572

7.  Yolanda Dackery 10501 Curran Blvd. New Orleans LO 70127 504 246 8663

8.  Nicole McCrory 2718 Sandy Ridge Ln Girdletree MD 21829 410-632-1780

9.  Floyd Robinson 8920 Idyllwild Lane San Diego CA 92119 619-469-0246

10. Gladys Robinson 8920 Idyllwild Lane San Diego CA 92119 619-469-0246

11. Craig Phillips, 1902 Salisbury Blvd. Salisbury, Maryland 21801 410 548 4600.

12. Weelam Slivey 416 Martin Str. Salisbury, MD 21804 410-749-9351

13. Colleen Nichols 2031 N. Salisbury Blvd. Salisbury, MD 21801 410-548-4700

14. Eleanor Ireland, 420 Snow Hill Road Salisbury MD 21804 410-749-2747

Plaintiff's list is based on his understanding of the scope of this case, and does not

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

include witnesses who may be called for purposes of impeachment or rebuttal.

Plaintiff also reserves the right to call any witness identified by Defendants.

**B. Defendant's Witness List**

1. Homer King, President, Delmarva Auto Glass.

2. John Gary Parks, Jr., Vice President, Delmarva Auto

3. Brian King, Delmarva Auto Glass

4. Kevin King, Installer, Delmarva Auto Glass

5. Charles J. Stonnell, Manager, Delmarva Auto Glass

6. LeRoy Singleton, Manager, Delmarva Auto Glass

7. Mike Conway, Shop Supervisor, Delmarva Auto Glass

**Plaintiff's Objections to Defendant's Witness List.**

Plaintiff objects to Defendant's proposed witness list to the extent that it does not identify the witnesses' addresses, phone numbers or as fully or accurately, as required by Local Rule 106.2(i).

X. **A list of each party and the name and specialties of experts the party proposes to call as a witness**.

**Plaintiff 's Expert**

Dr. Gloria Morote, Psychologist, 424 S. Washington Street Alexandria, VA 22314 703-683-2695.  Her testimony: That Plaintiff developed symptoms of Major Depression, which, inter alia, adversely impacted his marriage, caused changes in his sleep, appetite, difficulties with attention and irritability, as a result of having been subjected to a racially hostile work environment and wrongful discharge.

**A.    Defendant's Expert**

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

None.

**XI.    A list of the pages and/or lines of any portion of a deposition offered in a party's case in chief or any counter designations under Fed. R. Civ. P. 32 (a)(4).**

   A.   Plaintiff

   Aside of use for impeachment purposes, Plaintiff reserves the right to add or use the deposition testimony of any witness whom he is not able to subpoena or has attempted to subpoena e.g. unavailable witnesses.

   B.   Defendant

   None.

**XII.   Any other pretrial relief, including a reference to pending motions, which is requested.**

   A. Plaintiff

   Plaintiff respectfully requests that the Court resolve Plaintiff's Motion <u>In Limine</u> before a final PreTrial Order is entered.

   B.   Defendant

   None.

   **XIII.   Any other matters added by the court.**

                              Respectfully submitted,

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

|  |  |
|---|---|
| _____ | _____ |
| Anne J.A. Gbenjo | Steven B. Schwartzman |
| Law Office of Anne Gbenjo | Hodes Ulman Pessin & Katz, P.A |
| 1300 Mercantile Lane | 901 Dullaney Valley Road |
| Suite 100-C | Suite 400 |
| Largo, Maryland  20774 | Towson, Marylalnd 21204 |
| Phone: 301-883-0250 | Phone:  410-339-6746 |
| Fax: 301-883-9741 | Fax: 410-938-8909 |
| Counsel for Plaintiff | Counsel for Defendants |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

JOHN McCRORY                    )
                                )
            Plaintiff,          )
                                )
v.                              )     Civil No. CCB-02-2350
                                )
                                )
DELMARVA AUTO GLASS et. al.     )
                                )
            Defendants.         )
                                )

1

_____   )

      AND NOW, this _____ day of _____, 2003, IT IS ORDERED that the foregoing Joint Pretrial Order at the pretrial conference in the presence of the parties counsel, SHALL STAND AS THE PRETRIAL ORDER IN THIS CASE.

 

_____
JUDGE CATHERINE C. BLAKE
United States District Court

LAW OFFICES OF ANNE GBENJO
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1

**LAW OFFICES OF ANNE GBENJO**
1300 MERCANTILE LANE, STE. 100-C
LARGO, MD 20774
PHONE - 301-883-0250 • FAX - 301-883-9741

1